## HARRISON v. CRUME.

No. 14481—Opinion Filed May 12, 1925.

1. **Tenancy in Common—Innocent Purchasers—Possession by Cotenant—No Notice of Adverse Claim.**

A person dealing with one of two tenants in common is not charged with notice of an

adverse claim by the other tenant in common, who is in possession. The possession of one tenant in common is the possession of all, and a deed from one to the other, who is in possession of the common property, of the undivided interest, which is not delivered and not recorded, cannot affect the rights of a subsequent purchaser relying on the record title.

**2. Appeal and Error — Equitable Action— Sufficiency of Evidence.**

In an action of purely equitable cognizance, this court will not disturb the decree of the trial court unless from an examination of all the evidence in the case, it appears that such decree is clearly against the weight thereof.

(Syllabus by Logsdon, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Harry Harrison against William H. Crume to quiet title to certain lands. Judgment for defendant, and plaintiff brings error. Affirmed.

This action was commenced January 4, 1921, by Harry Harrison filing his petition in the district court of Okmulgee county against William H. Crume, wherein it was alleged in substance that the plaintiff is the owner of the legal and equitable title in fee simple of certain real estate therein described, and that defendant claimed some right, title or interest therein, but that such right, claim and title of the defendant was inferior to the title of the plaintiff and was a cloud thereon. It was further alleged that defendant had caused a deed to be recorded covering an undivided one-fifth interest in a 40-acre tract, which included the land involved in this action, but that said deed was taken with full knowledge of the prior right and title of the plaintiff. Plaintiff prayed for cancellation of defendant's deed, and that his title to the property be quieted.

For his answer, defendant pleaded a general denial and set up title to an undivided one-fifth interest in said lands by virtue of a deed duly executed and delivered by Alice Flint to the defendant, and asked judgment against the plaintiff for costs.

Trial was had to the court without a jury on July 8, 1921, resulting in a decree in favor of defendant and against the plaintiff, and after unsuccessful motion for new trial plaintiff has brought the case here by petition in error with case-made attached for review. The parties will be hereafter referred to as plaintiff and defendant, respectively, as they appeared in the trial court.

George C. Beidleman, for plaintiff in error.

Grant Gillespie and McCrory & Monk, for defendant in error.

Opinion by LOGSDON, C. Numerous assignments of error are contained in the petition in error, but they are all embraced and argued under the single proposition that the decree of the trial court is contrary to the law and the evidence.

It appears from an examination of the testimony preserved in the record, that the land in controversy was a portion of the allotment of Rachel Stidham, deceased, who left five heirs. These five heirs took an undivided interest in the 40 acres, Alice Flint, nee Sells, being one of the heirs and the plaintiff, Harry Harrison, being another. After the death of Rachel Stidham the plaintiff occupied and cultivated the lands in controversy under a rental contract made with the administrator of the estate of Rachel Stidham. Alice Flint borrowed $100 from the defendant, giving as security therefor a mortgage on her undivided interest in the 40 acres. This mortgage matured April 23, 1919. Plaintiff claims title to Alice Flint's undivided interest by virtue of a deed executed by her April 17, 1919. It appears that at the date of the execution of this deed A. R. Skidmore furnished to the plaintiff $50, which was paid to Alice Flint upon the purchase price of $200. Alice Flint, called as a witness on behalf of the plaintiff, testified that this deed was to be deposited in a bank at Boynton until the plaintiff paid off and discharged her mortgage to the defendant, which was due April 23, 1919, and also paid to her the remainder of the purchase price, which would be $40, the mortgage and interest amounting to $110. Plaintiff claims that the deed was to be left with Skidmore or in a bank until Alice Flint furnished him an abstract. Thereafter, and on July 31, 1919, Alice Flint executed a deed to her undivided interest to the defendant for the same consideration as she had agreed to accept from the plaintiff. Plaintiff never paid or offered to pay the mortgage to the defendant until after this land had become valuable by reason of the discovery of oil and gas on or adjacent thereto.

Plaintiff cites and relies on a line of authorities from this court, which announce the generally accepted rule that the possession of real property carries with it the presumption of ownership; that it is the duty

of one purchasing such property from one not in possession to ascertain the extent of the claims of the one in possession, and that such possession is notice to the world of such interest as the possessor actually has therein. Adams v. White, 40 Okla. 535, 139 Pac. 514; Shaffer v. Turner, 43 Okla. 477, 144 Pac. 366; Hass v. Gregg, 52 Okla. 51, 152 Pac. 1126; Wilkinson v. Stone, 82 Okla. 296, 200 Pac. 196. He also relies upon the provisions of Comp. Stat. 1921, sec. 3540, as follows:

"Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself."

This statute and the authorities are not considered to be applicable to the facts shown in this record. Alice Flint and the plaintiff were tenants in common and the possession of the plaintiff was the possession of Alice Flint. The defendant had actual notice and knowledge by reason of his mortgage from Alice Flint that she and the plaintiff were tenants in common. Therefore the possession of the plaintiff was no notice to the defendant of any right, title or interest which the plaintiff claimed in and to said lands other than the right, title and interest which his tenancy in common gave him. At the time defendant took his deed from Alice Flint, July 3, 1919, the terms and conditions under which the deed from Alice Flint to the plaintiff was executed had long since been breached by the failure of the plaintiff to pay off and discharge the mortgage at maturity. There never having been any delivery of her deed to the plaintiff, she had a good right upon the breach of the terms and conditions of his contract to repudiate said deed, then in escrow, and to execute a new deed to the defendant as she did. If the defendant had gone to the plaintiff and made inquiry concerning his right in the land, the only correct information which he could have obtained from the plaintiff would have been that plaintiff held the same as lessee of the administrator and as tenant in common with Alice Flint, and that Alice Flint had executed a deed to him for her interest, which deed had never been delivered and did not become effective because of breach by the plaintiff of the terms and conditions of the contract between the parties. None of these facts would have constituted notice to the defendant of the claim of title now asserted by the plaintiff to the undivided interest of Alice Flint. Plaintiff's possession as lessee of the administrator would not have been notice of any claim or right to the undivided interest of Alice Flint. As was said by this court in Telford et al. v. Ring, 79 Okla. 92 191 Pac. 179:

"One desiring to purchase land from its owner is not put on inquiry as to any negotiations a lessee may be carrying on with the owner for the purchase of such land, by reason of the lease for possession under such lease."

Neither would his possession as a tenant in common be any notice that he claimed adversely to Alice Flint. Arthur v. Coyne, 32 Okla. 527, 122 Pac. 688; Chouteau v. Chouteau, 49 Okla. 105, 152 Pac. 373; Longfellow v. Byrne, 68 Okla. 314, 174 Pac. 745; Howard v. Manning, 79 Okla. 165, 192 Pac. 358.

It is urgently insisted by plaintiff that the reason he didn't carry out his agreement with Alice Flint to pay off her mortgage indebtedness to the defendant at its maturity was because Alice Flint failed to furnish him an abstract. Alice Flint, as a witness for the plaintiff, denied that she was to furnish any abstract. The fact and circumstance that plaintiff and Alice Flint held their title in the same right as heirs of Rachel Stidham, deceased, who was the allottee of the land, adds credence to, the testimony of Alice Flint that no abstract was to be furnished. This land had been allotted to Rachel Stidham, and the plaintiff and Alice Flint were her descendants and heirs and both knew the exact condition of the title. Defendant filed his deed for record promptly on the day it was executed. Plaintiff filed his deed for record November 9, 1920, and on his deed is this indorsement: "When recorded return to A. R. Skidmore at Boynton, Okla." It developed upon the trial of the case that when this deed to plaintiff was withdrawn from the escrow holder and recorded, A. R. Skidmore held a deed from plaintiff to the mineral rights in the land. This lends weight to the suggestion of defendant in his brief that the violation of the escrow agreement and the recording of the escrow deed by the plaintiff, nearly 18 months after defendant's deed was recorded, was caused by the discovery of oil and gas upon or adjacent to this land.

A careful examination of the entire record of this case does not disclose that the decree of the trial court is against the clear weight of the evidence, but on the contrary, the evidence amply supports the same. Neither is the decree contrary to the law applicable to the facts disclosed by the record. The decree of the trial court should be in all things affirmed.

By the Court: It is so ordered.

Note.—See under (1) 38 Cyc. p. 21; 39 Cyc. n. 1759. (2) 4 C. J. p. 900.